**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VENTANA MEDICAL SYSTEMS, INC., )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ST. PAUL FIRE & MARINE )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>_____ ) | No. CIV 09-102-TUC-CKJ (CRP)<br><br>**ORDER** |

On January 13, 2010, Magistrate Judge Charles R. Pyle issued a Report and Recommendation [Doc. # 78] in which he recommended that this Court deny the Motion for Partial Summary Judgment [Doc. # 11] filed by Plaintiff Ventana Medical Systems, Inc. ("Ventana"), grant the Motion for Summary Judgment [Doc. # 37] filed by Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), deny Ventana's Requests for Judicial Notice [Doc. #s 16 and 63], deny St. Paul's Motion for Discovery under Fed.R.Civ.P. 56(f) as moot [Doc. # 37]; and grant, after St. Paul timely complies with L.R.Civ. 54.2, St. Paul's request for attorney fees under A.R.S. § 12-341.0 [Doc. # 37]. The magistrate judge advised the parties that any objections were to be filed and served within 14 days after being served with a copy of the Report and Recommendation. Ventana has filed an Objection and St. Paul has filed a Response. Ventana has also filed a Motion, and a Revised Motion, for Leave to File Reply Brief [Doc. #s 82 and 84].

I. *Motions for Leave to File Reply Brief*

Ventana requests leave to file a reply brief. Ventana asserts that Defendant's response cites two new cases not argued before the magistrate judge – Ventana asserts that Defendant is raising new arguments in an attempt to avoid inconsistencies with the Report and Recommendation. St. Paul asserts, however, that no legal authority gives Ventana the right to file a reply and that no good cause exists for allowing Ventana to file yet another brief. St. Paul also asserts that Ventana's stated reason for seeking leave to file a Reply is pretextual for wanting to again make the same arguments that it has already made in other filings. Rather, St. Paul asserts that no legal authority prohibits St. Paul from citing additional support for the Report and Recommendation.

Although Fed.R.Civ.P. 72(b)(2) provides for a response to objections to a Report and Recommendation, the rule does not provide for a reply. No explicit provision is made for reply papers. Indeed, another court has stated:

> While the petitioner has requested that he be allowed to file a reply to the respondent's response to his objections, the Court will not permit him to do so because Fed.R.Civ.P. 72(b)(2) does not authorize the filing of such a reply, *see Cannon Partners, Ltd. v. Cape Cod Biolab Corp.*, 225 F.R.D. 247, 250 (N.D.Cal.2003); *Bradberry v. Schriro*, 2009 WL 971298, at *1 (D.Ariz. April 8, 2009), and because the petitioner's proposed reply does not add anything significant to the several memoranda the petitioner has already filed.

*Hess v. Ryan*, 651 F.Supp.2d 1004, 1009 n. 1 (D.Ariz. 2009). As in *Hess*, Ventana's proposed reply does not add anything significant to the extensive briefing of issues in this case. Moreover, the Court does not find it appropriate to consider additional evidence, which may provide a basis to consider additional argument. *See e.g., Pan Am. World Airways, Inc. v. International Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2nd Cir. 1990). The Court will deny the requests.


II. *Report and Recommendation – Preliminary Issues*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's

recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." The statute does not "require [] some lesser review by [this Court] when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 149-50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Rather, this Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Id.* at 149.

Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003) (discussing the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). In other words, if there is no objection to a magistrate judge's recommendation, then this Court may accept the recommendation without review. *See e.g., Johnstone*, 263 F.Supp.2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

In this case, Ventana has objected to specific portions of the Report and Recommendation. As to those portions not objected to, the Court has reviewed the Report and Recommendation and finds that those portions are well-taken. The Court will adopt those portions of the Report and Recommendation.[1] Additionally, the Court specifically incorporates the factual and procedural background as set forth by the magistrate judge and,

---

[1]The Court notes that, although Ventana repeatedly discusses the Second Amended Complaint (SAC") in its Objection, Ventana does not specifically object to the magistrate judge's determination that the First Amended Complaint ("DAC") should be considered in the analysis of the claims and does not dispute the findings of the magistrate judge (e.g., Ventana did not provide the SAC to St. Paul, Ventana has not offered any relevant law that supports a conclusion that St. Paul had a duty to discover the SAC, and that the claims against Ventana did not change from the DAC to the SAC). The Court adopts this analysis.

therefore, will not repeat it here.

Additional filings have been made since the issuance of the Report and Recommendation. On January 25, 2010, St. Paul filed a Motion Regarding Attorney Fees and Costs [Doc. # 79]. Further, on February 19, 2010, Ventana filed a Motion for Leave to File a Reply Brief [Doc. # 82]; on February 22, 2010, Ventana filed a Revised Motion for Leave to File a Reply Brief [Doc. # 84]. On March 5, 2010, March 24, 2010, and April 9, 2010, Ventana filed Notices of Supplemental Authority. On March 29, 2010, and April 14, 2010, St. Paul filed Responses to the Notices of Supplemental Authority.

III. *Notice of Supplemental Authority*

Ventana's Notices of Supplemental Authority ask the Court to consider *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, ___ F.Supp.2d ___, 2010 WL 691150 (N.D.Cal. Feb. 19, 2010), *American Best Food, Inc. v. Alea London, Ltd.*, 2010 WL 963933 (W.D.Wash. March 8, 2010), and *Hyundai Motor America v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2010 WL 1268234 (9th Cir. April 5, 2010). However, none of these cases provide controlling precedent as to Arizona law and the Court declines to consider these cases.

IV. *Analysis by Magistrate Judge*

Ventana asserts that the magistrate judge should have focused on the potential coverage arising out of the facts asserted in the complaint and extrinsic evidence known to St. Paul when it denied coverage rather than improperly focusing on the gravamen of the suit and labels of causes of action. This Court disagrees with Ventana's characterization. Rather, the magistrate judge set forth the history of the prior patent infringement lawsuit with Digene Corporation ("Digene"), *see* R & R, pp. 8-10, Ventana's request to St. Paul for coverage, *see* R & R, pp. 10-12, and discussed the parameters of St. Paul's duty in denying coverage, *see* R & R, pp. 19-24. The magistrate judge also discussed whether the facts constituted a covered claim for disparagement, *see* R & R, pp. 24-28, and discussed whether

the facts constituted a covered claim for an unauthorized use of a slogan, *see* R & R, pp. 24, 28-30. The Court finds the magistrate judge's analysis was proper.

Ventana also asserts that the magistrate judge's analytic approach was not consistent with analysis of offenses-based coverage. Ventana's Objection, pp. 4-5. It is not entirely clear what type of analysis, rather than an analytic approach, Ventana believes should be utilized. The magistrate judge set forth the standards and applied those standards. Without a more specific objection, the Court merely finds that, generally, the magistrate judge properly evaluated the standards and claims.

## V. *Whether Fact Allegations Known to St. Paul Compelled a Defense*

Ventana asserts that the magistrate judge improperly applied Arizona law by failing to determine whether fact allegations known to St. Paul required St. Paul to provide a defense under the 2001 and 2002 policies.

## A. *Applicable Insurance Policy*

The magistrate judge determined that St. Paul did not have a duty to defend under the 2001 policy. The magistrate judge, therefore, analyzed St. Paul's alleged duty to defend under the 2002 insurance policy.

Ventana asserts, however, that Digene's SAC repeatedly alleges Ventana's "ongoing" misconduct from 2001 onward.[2] Indeed, Ventana points out that Digene's claim for tortious interference alleges liability due to two agreements that predate the 2002 Beckman Instruments ("Beckman") acquisition press release.[3] Ventana also asserts that the liability arose as of 2001 – the SAC asserts liability generally for conduct that arose under both the

---

[2]Similar language is contained within the DAC. *See* St. Paul's Statement of Facts ("DSOF"), Declaration Ex. 2, DAC [Doc. # 41-2], ¶¶ 26, 29, 53, 54, 65, 81, 87, 91, 93,

[3]Similar language is contained within the DAC. *See* DSOF, Declaration Ex. 2, DAC [Doc. # 41-2], ¶¶ 21 (January 2000 agreement), 40 (September 23, 2002, agreement), 75.

2001 and 2002 policies.[4] Ventana alleges that its March 2, 2001, press release advertised the launch of Ventana's probes.[5] Ventana also states that Digene's lawyers, in a letter brief and oral argument, argued that Ventana's September 24, 2002, press release attempted to legitimize pre-existing offending products, and that Digene's discovery focused on liability from Ventana's 2001 product launch.

Although Ventana has not objected to the magistrate judge's conclusion that consideration of the DAC, rather than Digene's SAC is appropriate, Ventana has based some of its supporting facts on Digene's SAC. Because comparable language is also included in the DAC, the Court will consider these arguments.

St. Paul disputes Ventana's arguments by asserting that the policies only provide coverage for a personal injury or advertising injury offense if it is committed during the policy period. Indeed, the 2001 and 2002 policies both refer to "a personal injury offense committed while [the] agreement is in effect." St. Paul's Supplemental Statement of Facts ("DSSOF"), Declaration, Ex. 1, 2001 Policy, [Doc. # 67-2], p. 53 of 111, and Declaration, Ex. 9, 2002 Policy, [Doc. #12-3], p. 23 of 60. Similarly, both polices refer to an "advertising injury offense committed while this agreement is in effect." DSSOF, Declaration, Ex. 1, 2001 Policy, [Doc. # 67-2], p. 54 of 111, and Declaration, Ex. 9, 2002 Policy, [Doc. # 12-3], p. 24 of 60. St. Paul asserts that Digene's amended complaint included no allegations that even hinted at a personal injury or advertising injury offense "committed" in 2001.

However, Ventana also asserts that the magistrate judge "[m]isperceived that for purposes of evaluating a defense, reference to a "2001 product launch" in the September 2002 Ventana press release did not satisfy the policy language, which required only "[m]aking known . . . material that disparages the products . . . of others[.]" Ventana's

---

[4]Similar language is in the DAC. *See* DSOF, Declaration Ex. 2, DAC, ¶¶ 81, 87, 91.

[5]Language similar to that attributed to Digene's SAC is also found in the DAC. *See* DSOF, Declaration Ex. 2, DAC, ¶ 29.

Objection, p. 2.  Specifically, Ventana asserts the magistrate judge assumed the term "'launch' used in reference to Ventana's 2001 product launch is necessarily limited to the act of physical delivery of a product, rather than the introduction of new merchandise to the general public typically occurring 'through a special ad campaign [such as a press release] or PR push[.]"  Ventana's Objection, p. 2, n. 8, *citing* Product Launch – (Marketing & Webb): Definition, http://en.mimi.hu/marketingweb/product_launch.html; *see also* Go Big Network, product launch definition, http://www.gobignetwork.com/Information/Go-BIG/ Dictionary/product-launch-definition.html; Business definition for Poland product launch, http://dictionary.bnet.com/definition/productpluslaunch.html.

The magistrate judge stated:

> Ventana's supplemental memorandum is riddled with blatantly incorrect statements of the facts.  In another example, Ventana contends that Digene's amended complaint contained pertinent factual allegations linking 2001 press releases to the September 2002 press release.  Ventana stated "[a]lso pertinent is the content of its September 24, 2002 web posting which **expressly referenced Ventana's marketing of an HPV 35 probe since the last quarter of 2001**." (Doc 62, p 13) (emphasis in original). This is wrong.  Ventana's September 2002 press release did not reference any marketing from 2001.  It did state that Ventana launched one of its HPV products in 2001, but there is not a single word about marketing or any reference to a press release from 2001.  Mentioning the launch date of a product is not the same as referencing a specific press release about that product.  The difference is significant when Ventana attempts to argue a claim of implicit disparagement based on a 2001 press release that was never mentioned.  It is disingenuous for Ventana to suggest the 2001press release was implicated.

R & R, p. 17, *emphasis in original*.  St. Paul asserts, however, that the magistrate judge read the 2002 press release like St. Paul did . . . and found no content that could be considered disparagement – express or implied.

The Court agrees with Ventana that the magistrate judge's characterization of "launch" fails to consider that it may include marketing.  Therefore, when the DAC made allegations about the September 24, 2002, press release, marketing in the fourth quarter of 2001 may have been implicated.  *See*, DSOF, Declaration Ex. 2, DAC, ¶¶ 80, 86, 90 ("Ventana's September 24, 2002 news release and web site posting was knowingly and willfully false and/or misleading.").  However, the detailed DAC discussed conduct in 2001, yet did not allege any covered offense in 2001.  Indeed, Ventana has not shown that counsel

for Digene "clarified" that Digene was suing over the 2001 press releases.[6]

B. *Estoppel Based on Insufficient Notice*

Ventana asserts that St. Paul's failure to articulate a specific factual basis for the denial of coverage in its denial letter is contrary to Ninth Circuit authority that an insurer's denial "must 'provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim.'" *Lutz v. First Fin. Ins. Co., Inc.*, 247 Fed.Appx. 911, 912 (Alaska 2007) (insufficient denial notice may result in insurer being equitably estopped from raising coverage defenses).

St. Paul asserts that it provided a detailed statement of the allegations in the amended complaint, cited language from both the 2001 Policy and the 2002 Policy, explained that the amended complaint did not include allegations that fell within the policies' personal injury or advertising injury coverage, explained that certain exclusions applied, and invited Ventana to provide any additional information for further consideration. St. Paul also points out that, when Ventana contested the coverage disclaimer, Ventana only referred St. Paul to the September 24, 2002, press release and argued that it alone triggered a duty to defend; St. Paul asserts it reviewed the press release and notified Ventana that the allegations relating to the press release did not alleged covered offense.

Initially, the Court notes that the Ninth Circuit was discussing Alaska law in *Lutz*. Moreover, the court determined the denial notice was insufficient because it did not reference any specific law or facts related to the dispute, referenced policy provisions that did not include the defense, and contained a material misstatement of Alaska law.

The July 18, 2003, denial letter in this case specifically stated what documents had been reviewed. *See* Declaration, Ex. 6, [Doc. # 14-4], p. 1 of 13 (St. Paul "has received and reviewed the material presented as well as the polices issued by St. Paul to [Ventana].").

---

[6]Ventana has not objected to this conclusion of the magistrate judge as found on page 18 of the Report and Recommendation. The Court adopts this finding.

The letter also included a summary of the litigation and the claim, a discussion of the coverage under the 2001 policy, a discussion of the coverage under the 2002 policy, and a discussion of the coverage under the 2003 policy. The denial letter also set forth the definitions of relevant terms and set forth St. Paul's determination that (1) the allegations did not seek damages for bodily injury or property damage as defined under the policies or qualify as an event under the policies. (2) the claims in the amended complaint did not allege a personal injury offense under the policies, and (3) the claims in the amended complaint do not fall within the definition of an advertising injury offense under the policies. The denial letter also discussed the exclusions contained within the policies and the damages that were not covered by the policies.

Moreover, the September 9, 2003, letter from St. Paul informed Ventana that it had considered the policy language, the press release, and the allegations included in the complaint.[7] *See* Declaration, Ex. 6, [Doc. # 14-6], p. 1 of 6; *see also* Declaration, Ex. 6 [Doc. # 14-6], pp. 3-4 of 6, 6 of 6 ("None of the alleged actions of Ventana (including the dissemination and web posting of the September 24, 2002 press release) constitute a personal injury offense.), *emphasis omitted*.

Unlike the situation in *Lutz,* St. Paul's denial letter referenced specific facts and discussed specific terms of the polices. The denial letter and follow-up letter specifically informed Ventana on what documents St. Paul had considered in reaching its conclusion. The Court finds St. Paul is not estopped from raising coverage defenses.


VI. *Whether Allegations Evidenced Ambiguity Such that Coverage was Required*

Ventana asserts that the magistrate judge erred in relying on *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (Ariz. 1973), and *United States Fld. & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 788 P.2d 1227 (App. 1989), but

---

[7]In the context of the letter, it is clear that St. Paul is referring to the September 24, 2002, press release.

disregarding *Aetna Cas. & Sur. Co. v. Dannenfeldt*, 778 F.Supp. 484 (D.Ariz. 1991), in determining that an insurer may (but need not) refuse to defend based on known facts outside the complaint even when alleged facts trigger the defense duty.[8] Ventana argues that, post-*Kepner*, the Arizona Court of Appeals reversed summary judgment for the insurer due to genuinely disputed extrinsic facts impacting the coverage potential without regard to whether the insurer had investigated. *Granite State Ins. Corp. v. Mountain States Tel. & Tel. Co.*, 117 Ariz. 432, 573 P.2d 506 (App. 1977). In *Granite State*, the court stated that "the duty to defend should focus on the facts rather than upon the allegations of the complaint which may or may not control the ultimate determination of liability." 573 P.2d at 509; *see also Dannenfeldt*, 778 F.Supp. at 499, *quoting Baugh Const. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1168 (9th Cir. 1988) ("when the allegations of the complaint are ambiguous or inadequate, the insurer must investigate facts which might give rise to potential liability").

Ventana argues that the "ambiguity" of the underlying complaint was not disputed, nor was the press release that St. Paul eventually did discover and read. Ventana asserts that neither *Kepner* nor *Advance Roofing* directly rejected or contradicted *Granite State*'s or *Dannenfeldt*'s central points that in Arizona a court must consider the facts as they exist or may evolve rather than merely the facts as pled when deciding a duty to defend and that those facts are not limited to those the insurer raises. Indeed, Ventana argues that an investigation duty is not relevant because St. Paul knew of the press release that allegedly disparaged Digene.

However, Ventana's argument fails to consider that the *Dannenfeldt* court's discussion of investigating facts which might lead to potential liability was not based on Arizona law. *See e.g., Dannenfeldt*, 778 F.Supp. at 499 (discussing California case law); *Baugh Const.*, 836 F.2d at 1168 (discussing Washington case law). Nonetheless, the

---

[8]Ventana also takes issue with the magistrate judge's chastisement of Ventana for asserting that an Arizona insurer's duty to investigate is mandatory.

principle is consistent with *Granite State*. However, contrary to Ventana's assertion that whether there is a duty to investigate is not relevant, the court in *Advance Roofing* stated:

> [W]hile a liability insurer may initially rely on the allegations of the underlying complaint to determine whether it must provide its insured with a defense, it may not rely on that determination, without investigating the facts, once the insured has come forward and made some factual showing that the suit is actually one for damages resulting from events which do fall into policy terms.

*Advance Roofing*, 163 Ariz. at 480, *quoting Johnson v. Aid Ins. Co. of Des Moines, IA*, 287 N.W.2d 663, 788 P.2d 1227, 1232 (Minn. 1980). The magistrate judge discussed this obligation. *See* R & R, 21. Further, the magistrate judge correctly stated the standard. *See* R & R, p. 22 ("St. Paul needed to investigate beyond the amended complaint only if Ventana made some factual showing that the Digene litigation was for damages falling within St. Paul's insurance policy.")

However, in light of this Court's determination that the September 24, 2002, press release, when it referred to the 2001 launch of the probe, may have included marketing, this Court must determine how that affects whether the September 24, 2002, press release triggered a duty upon St. Paul to investigate further.

After receiving the July 18, 2003, denial letter, Ventana responded by asserting that Digene's claims "under the Delaware Deceptive Trade Practices Act and Lanham Act based on an allegedly false and misleading press release and web posting promoting Ventana and its products" required St. Paul to provide coverage. Declaration, Ex. 7, [Doc. # 14-5]. When St. Paul responded with its September 9, 2003, letter, St. Paul specifically informed Ventana what documents had been considered. Declaration, Ex. 8, [Doc. # 14-6]. The letter also stated:

> If you have any additional information as to why you believe that the actions of Ventana (in the issuing and posting of the 9/24/02 press release or in any other activity outlined in the Complaint) indicates that coverage is triggered under the policies, please provide that information as soon as possible for St. Paul's review.

Declaration, Ex. 8, [Doc. # 14-6], p. 6 of 6. In other words, St. Paul was clearly inviting Ventana to clarify to St. Paul what, if any, was the significance of the issuing and posting of the press release as it pertained to possible coverage. Ventana did not come forward with

any further information.  This Court finds that simply presenting the press release, without any further clarification, does not constitute Ventana coming forward and making a factual showing that the suit falls within the policy terms.  The Court finds Ventana's attempts to create a connection between the 2002 press release and conduct in 2001 are not supported by the evidence in the record.  The Court finds that, as a matter of law, St. Paul had no duty to defend under the 2001 policy.

Moreover, the magistrate judge appropriately considered "the 2002 insurance policy, Digene's amended complaint, and the September 2002 news release[,]" Ventana's Objection, p. 8, because Ventana did not come forward with some additional factual showing to trigger a duty of St. Paul to investigate.[9]  The Court agrees with the magistrate judge's determination that, under a summary judgment standard, St. Paul was not required to investigate facts, as applied to the 2002 policy, beyond the DAC and the 2002 press release.  Further, because the Court agrees that consideration of additional information is not appropriate, the Court agrees with the magistrate judge's recommendation to deny Ventana's request for judicial notice of additional documents.[10]

---

[9]The Court notes that, after Ventana came forward with its August 19, 2003, letter with its reference to the press release, St. Paul reevaluated its decision in light of the "new" information.

[10]As previously discussed by the Court, Ventana asserts that St. Paul failed to articulate a specific factual basis for the denial of coverage in its denial letter.  Therefore, Ventana asserts that it had no occasion to call St. Paul's attention to Ventana's website referencing the March 2001 press release announcing the launch of the probe.  However, this Court has found that St. Paul's denial letter referenced specific facts and discussed specific terms of the policies.  There was no basis for St. Paul to investigate when Ventana did not provide further information to St. Paul.  Indeed, Ventana asserts that reference to the "web site posting" in Digene's allegations required St. Paul to investigate the web site.  Ventana's Objections, p. 8.  However, a plain reading of the DAC indicates that the September 2002 press release and web site contained the same information.  *See* SAC [Doc. # 54], Ex. 2 (press release) and Declaration of Christopher Butler [Doc. # 45], Ex. A (web posting).  There was no basis for St. Paul to search for and/or review a repetitive document where Ventana had not come forward with some additional factual showing to trigger a duty of St. Paul to investigate.

A. *Consideration of Facts Known or Knowable to St. Paul*

Ventana asserts that, under case authority consistent with Arizona law, facts made known to St. Paul at any time should be considered to determine that St. Paul should provide a defense under the 2001 policy. Ventana asserts:

> There is no Arizona case that says that facts evidencing potential coverage after a coverage case is initiated may not be considered where, as here, St. Paul explained that even if provided earlier, the facts Ventana relies upon would not have changed its coverage analysis. *See Teletronics Int'l, Inc. v. CNA Ins. Co./Transportation Ins. Co.*, 302 F. Supp. 2d 442, 449 (D. Md. 2004), *rev'd and remanded on other grounds by* 120 Fed. Appx. 440 (4th Cir. (Md.) 2005) ("[T]he failure to provide – or the unavailability of – relevant extrinsic evidence does not eradicate the insurer's duty to defend once the insurer is presented with that information. . . . [I]f . . . the insurer 'would have declined the defense in any event based on its mistaken conclusion that there was no potential coverage [ ] the insurer should not later be allowed to use the delay as a bar to reimbursing the insured for the reasonable expenses incurred in defending the covered claim.'" (emphasis added)).

Ventana's Objections, p. 10, n. 41. The Court disagrees with Ventana's assertion that consideration of additional information is consistent with Arizona case law. Rather, as the magistrate judge discussed and this Court has discussed, in determining whether an insurer must provide a defense, the insurer must investigate the facts once an insured "has come forward and made some factual showing that the suit is actually one for damages resulting from events which do fall into policy terms." *Advance Roofing*, 163 Ariz. at 480. Where an insured has not made some factual showing, and an insurer has not investigated, it is simply not reasonable to consider additional information at a later time to determine whether there has been a breach. *See e.g., Granite State*, 117 Ariz. at 436 (where insurer refuses to defend when coverage was required, insurer breaches contract). The Court finds this objection is not well-taken.

VII. *Disparagement – Magistrate Judge's Failure to Distinguish Cases*

Ventana argues that the magistrate judge failed to acknowledge that a number of cases "have found disparagement is not limited by the policy language to product-to-product comparison and includes attacks on another's assertion of intangible property rights associated with its products, such as Digene's claim to exclusivity in promotion of HPV 35

probes premised on its patent rights." Ventana's Objection, p. 2. Initially, the Court notes that Ventana has not provided any authority for the apparent assertion that a court must discuss and/or distinguish all cases cited by a party, irregardless of how numerous, redundant, or pertinent the cases may be.

Nonetheless, the Court will discuss the cases cited by Ventana in this objection. Ventana cites to *Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 Fed. Appx. 589, 592-93 (9th Cir. (Cal.) 2007), for the assertion that there is a duty to defend based on a covered "disparagement" by insured's alleged misstatements to banks about a competitor's trademarks ownership and validity. Similarly, Ventana cites to *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002), for the assertion that there is a duty to defend where an insured allegedly made statements to a competitors' customers that the competitor's products infringed on the insured's patent rights. Additionally, Ventana cites to *Liberty Mut. Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192, 199 (Ind. Ct. App. 2005), for the assertion that a "disparagement" based on an insureds' statements that their disputed oven technology was "exclusive" and "secret," thereby creating market confusion and deterring purchases of competitor's products, may be covered. Initially, the Court notes that none of these cases discuss Arizona law. Further, these cases involve allegations that insureds made false statements regarding the exclusive right to a product or where the insureds falsely accused others of infringing upon an insured's rights.

Ventana asserts:

Even if Ventana made no explicit false statement that Digene lacked particular rights to its HPV portfolio, it is implied when Ventana states that it possesses those rights. Thus, in two specific cases, where courts found disparagement of another's intangible property rights, there were no explicit statements that the claimants lacked such rights.[39] This reflects the nature of rights, especially patent rights: the existence of one party's rights means the nonexistence of another's as a number of analogous cases have found.[40]

[39]*Western Int'l Syndication Corp.*, 222 Fed. Appx. at 592 ("The statements [that the Apollo Show would not be distributed for the 2003/2004 broadcast season] . . . '[are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in . . . intangible things . . . .' "); *OSI Indus., Inc.*, 831 N.E.2d at 199 ("Liebermann's statements disparaged the 'Thermodyne Oven' by creating confusion about the product and the technology in the marketplace because it was unclear as to which company,

- 14 -

OSI/Beltec or Thermodyne, had the rights to and was producing an oven with the unique technology.").

[40]Patent rights are analogous to rights to claim FDA approval. *See Pennfield Oil Co.*, 2007 WL 1290138, at *1, *8 ("[T]he false assertion that [Pennfield] had FDA approval for multiple uses in advertising and loose-leaf inserts . . . [will] implicitly disparage Amphora's product because Amphora is the only other manufacturer of the product with FDA approval.").

Ventana's Objection, p. 10. The magistrate judge stated:

> Ventana also attempts to allege some disparagement by arguing its September 2002 press release negated Digene's exclusivity to the HPV patents. This is simply wrong. Beckman had a valid sub-license to Digene's patents. Digene never had an exclusive right to the patents. Whether Beckman was actively developing products using its access to those patents is irrelevant to this analysis. Digene did not allege that Ventana stated its product was better than Digene's product or that it had exclusive access to the patents. In fact, Ventana in its press release, did not name any competitor and did not make any product comparisons. It simply stated that it had access to the HPV intellectual property. This is not disparagement, explicit or implicit.

R & R, p. 28.

The Court agrees with the magistrate judge's consideration of Digene's allegations. *See* DSOF, Declaration Ex. 2, DAC [Doc. # 41-2]; September 24, 2002, press release [Doc. # 12-2]. The statements by Ventana do not constitute disparagement.

VIII. *Consideration of Vague or Ambiguous Fact Allegations*

Ventana also asserts that the magistrate judge failed to consider that Arizona law provides that when fact allegations are vague or ambiguous in answering the questions raised by the policy or whether Ventana was "making known . . . material that disparages the products . . . of others," extrinsic evidence must be evaluated to determine whether a duty of defense arises. Ventana's Objection, p. 3. Ventana asserts that, because the covered disparagement could have occurred during the 2001 policy period and the court cannot find to a certainty that no "disparagement" occurred during that policy period, a defense was owed.

St. Paul asserts, however, that Digene's allegations were not ambiguous. Moreover, St. Paul asserts that extrinsic evidence must be examined only if an insured has provided information to the insurer and "drawn its attention to the information that supposedly

demonstrates that the suit is actually one for which coverage exists." St. Paul's Response, p. 13, *citing Advance Roofing*, 788 P.2d 1227, and *Tri-Star Theme Builders, Inc. v. Hawkeye-Security Ins. Co.*, 653 F.Supp.2d 973, 983 (D. Ariz. 2009) (when an insured comes forward with extrinsic evidence, it must point to specific evidence showing the existence of a covered claim and cannot "drop hundreds of pages of documents onto the lap of the insurance company . . . and expect the insurance company to simply discover on its own whether coverage is implicated; and, even more so, expect and assert that the insurance company is on notice of everything that is contained in the hundreds of pages of documents.").

Although invited to by St. Paul, Ventana did not provide "additional information as to why [Ventana] believe[d] that the actions of Ventana (in the issuing and posting of the 9/24/02 press release or in any other activity outlined in the Complaint) indicate[d] that coverage [was] triggered under the policies" to St. Paul. Declaration, Ex. 7 Doc. # 14-6, p. 6 of 6. The Court agrees that Digene's allegation were not vague or ambiguous.

IX. *Implicit Disparagement*

Ventana asserts that the cases do not support a denial of a defense as implicit disparagement is adequately alleged. Specifically, Ventana asserts that the magistrate judge erred in relying on *Parkham Indus. Distributors, Inc. v. Cincinnati Ins. Co.*, No. 3:06CV-53-S, 2008 WL 451023 at *4, *5 (W.D.Ky. Feb. 15, 2008), and *Heritage Mutual Ins. Co. v. Advanced Polymer Tech, Inc.*, 97 F.Supp.2d 913, 932 (S.D.Ind. 2000). Ventana criticizes these cases because they did not address the possibility that an "attack on the rights of another to assert claims for an intangible property right" could be an implicit disparagement and assumed that implicit disparagement was not actionable. Ventana's Objection, pp. 12-13.

However, the magistrate judge cited a number of cases, including *Parkham* and *Advanced Polymer*, in discussing disparagement. Indeed, the magistrate judge stated that "Digene did not allege disparagement and Ventana has not shown that a reasonable juror

could find that Digene alleged facts of implicit disparagement, if such a tort arguably exists under Arizona insurance law." R & R., p. 28. In other words, the magistrate judge assumed such claim was available under Arizona law. Moreover, the magistrate judge also discussed that Digene did not allege that Ventana stated its product was better than Digene's product or that it had exclusive access to the patents. The Court agrees with the magistrate judge's thorough analysis – no reasonable juror could find that Digene alleged facts of implicit disparagement.

X. *Analysis of the Intellectual Property Exclusion in the 2002 Policy*[11]

Ventana asserts that the magistrate judge conflated his analysis of the intellectual property exclusion in the 2002 policy with the distinct "notice of a change of policy language" in a separate document. Further, Ventana asserts that neither the "notice of change" nor the new expansionary sentence in the policy apprised Ventana of the change to its rights.

The magistrate judge specifically addressed whether St. Paul had provided notice of the change to Ventana:

> St. Paul gave Ventana notice of the changes to its 2002 policy. (Doc 12-3, Ex 9, pp 55-60). St. Paul included in the notice a description of the changes to the IP exclusion. St. Paul explained it "[a]dded a second paragraph to exclude coverage for other injury or damage or medical expenses alleged in a claim or suit that also alleges infringement or violation of intellectual property rights or laws." (Doc 12-3, Ex 9, p 56)

R & R, p. 7. The magistrate judge further stated:

> St. Paul clearly identified the changes it was making to Ventana's insurance policy when it issued the 2002 policy. In a section of the 2002 policy titled in bold and all caps "**CHANGES THAT LIMIT OR EXCLUDE COVERAGE - REGARDLESS OF THE LAW THAT APPLIES**", St. Paul identified the broadened IP exclusion. (Doc 12-3, Ex 9, p 56). St. Paul stated "[a]dded a second paragraph to exclude coverage for other injury or damage or medical expenses alleged in a claim or suit that also alleges infringement or violation of intellectual property rights or laws." (Doc 12-3, Ex 9, p 56). Furthermore, this sentence was conspicuous, plain and clear

---

[11]The Court having determined that consideration of the claims under the 2001 policy is not appropriate, the Court will not address Ventana's arguments as to the 2001 policy. *See* Ventana's Objections, pp. 13-14.

in the insurance policy. Under the bolded Intellectual Property section, St. Paul set out a separate paragraph in which it stated "[n]or will we cover any other injury or damage or medical expenses alleged in a claim or suit that also alleges any such infringement or violation." (Doc 12-3, Ex 9, p 40). This statement is not ambiguous. Taken in conjunction with the paragraph above it, St. Paul intends to exclude from its general liability policy any damages that arise from intellectual property violations and any damages that arise from any other claims when a claim of intellectual property violation is asserted.

R & R, p. 31, *emphasis in original*. The Court disagrees with Ventana's assertion that neither the "notice of change" nor the new expansionary sentence in the policy apprized Ventana of the change to its rights; rather, the Court agrees with the magistrate judge that St. Paul clearly identified the changes. The change to the policy was conspicuous and phrased in clear language. *See Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 21 P.3d 395 (2001).

Moreover, Ventana's assertion that the magistrate judge did not address the issue of whether, in light of the change in the policy, the policy is truly conspicuous, plain and clear in communicating the import of that change, simply ignores the magistrate judge's discussion of all of the specific language communicated by St. Paul regarding the change in the policy. Similarly, the Court disagrees with Ventana's assertion that the language of the exclusion is subject to an alternate interpretation. *See* Ventana's Objection, p. 15 ("Limiting the exclusionary provision to indemnity and thereby resolving the issue of how to allocate damages in a 'mixed action,' as well as eliminating a need to adjudicate causation by determining whether damages were for a covered claim versus an uncovered claim, is an equally viable reading of that provision."). The language of the policy was clearly communicated to Ventana and is not ambiguous. The Court agrees with the magistrate judge's conclusion that St. Paul intended "to exclude from its general liability policy any damages that arise from intellectual property violations and any damages that arise from any other claims when a claim of intellectual property violation is asserted." R & R, p. 31.

Furthermore, the magistrate judge did not conflate this discussion with its consideration of whether the IP exclusion applied to the claims. Rather, the magistrate judge quoted the IP exclusion in its entirety, discussed whether a trademarked slogan was

involved, and considered the analysis in a similar case. *See Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL 23198852 (S.D.Cal. 2003). Additionally, the magistrate judge discussed other arguments presented by the parties (e.g., St. Paul's argument that, even under the 2001 policy, the factual allegations that Ventana contend amount to implicit disparagement and unauthorized use of a slogan derive from Ventana's alleged use of Digene's patents; Ventana's argument seeking to distinguish *Molecular*; distinguishing *Align Technology, Inc. v. Federal Ins. Co.,* 2009 WL 4282098 (N.D.Cal. 2009)).

Ventana also asserts that the magistrate judge's suggestion that claims of implicit disparagement constitute an alleged misuse of Digene's two HPV patents and, therefore, fall within the patent infringement exclusion is contrary to settled law. *See Aurafin-OroAmerica, LLC v. Federal Ins. Co.*, 188 Fed. Appx. 565, 566-67 (9th Cir. (Cal.) 2006). In *Aurafin-OroAmerica*, the court stated:

> The district court also erred when it held that even if D & W's counterclaims alleged a potential defamation claim, the intellectual property exclusion precluded coverage. First, there is no intellectual property right to be free from patent misuse. Patent misuse does not allege infringement of one's patents. Rather, patent misuse is an equitable defense to a claim of patent infringement that 'arose to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy. The policy purpose was to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right.'

188 Fed.Appx. at 566-67, *quoting Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed.Cir.1992). Ventana asserts that, because patent misuse is not a true intellectual property claim, it does not fall within the policy's IP exclusion.

The magistrate judge stated:

> . . . Even if this Court were to apply St. Paul's 2001 insurance policy with its more narrow IP exclusion, the alleged claims of implicit disparagement and unauthorized use of a slogan would still be excluded under the IP exclusion. These alleged claims arise from Ventana's alleged misuse of Digene's two HPV patents.

R & R, p. 33. This Court does not read the magistrate judge's statement to imply that claims of implicit disparagement constitute an alleged misuse of Digene's two HPV patents. There was no discussion by the magistrate judge of any significant meaning of the word misuse

- 19 -

as it applies to patents. Rather, the plain reading of the magistrate judge's statement, in the context of the R & R, is that the alleged claims arise from the alleged unlawful use of the patents. The Court finds this objection is not well-taken.

## XI. *Knowledge of Falsity Exclusion*

Ventana asserts that the magistrate judge improperly applied the "knowledge of falsity" exclusion despite a plethora of recent case authority clarifying that, on the pertinent facts here, that exclusion could not bar a defense where liability could attach for conduct that would not implicate the exclusion. *Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738 at 748 (S.D. Ind. 2009) (a majority of courts have determined that the exclusion does not apply if the plaintiff in the underlying action could have succeeded without proving intentional misconduct); *Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.*, 2007 WL 4247875, at *8 (M.D.Fla. Nov.30, 2007) (collecting cases). The *Aearo Corp.* court explained:

> These courts reason that, if the insured were to proceed to trial without the defense of its insurer, it could be found liable under a theory that did not require a showing of intentional conduct and was otherwise covered under the insurance policy. In such a case, the insurer would have a duty to indemnify the insured for its losses. Because the duty to defend is broader than the duty to indemnify, the insurer is thus required to defend the insured if the underlying lawsuit could succeed on any theory without proof of intentional conduct. [Citation omitted.] These cases are persuasive and are consistent with principles of Indiana law. *See American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996) (ambiguous policy exclusions are to be construed strictly against the insurer); *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind.1991) (duty to defend is broader than duty to indemnify).

*Aearo Corp.* at 748-49. The magistrate judge discussed this principle:

> Other courts have held false material exclusions relieve a duty to defend in cases involving claims of falsity, even when "the statute underlying the action allows relief on a lesser showing of culpability." *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 646 (7th Cir.2007). Where a complaint alleges claims that could be either intentional tort allegations or a negligence tort action, however, the false material exclusion would not waive a duty to defend. *Id.* at 644. In contrast, specific allegations of fraud with no alternative negligence theory are allegations to which the false material exclusion would apply.

> Ventana alleges its September 2002 press release and statements it made regarding its access to Digene's HPV patents were claims of implicit disparagement and unauthorized use of a slogan. Ventana alleges these claims can be found in the factual allegations of Digene's amended complaint in Counts VII, VIII, and IX.

- 20 -

These counts alleged violations of Delaware Deceptive Trade Practices Act, violations of the federal Lanham Act and violations of common law unfair competition. By definition, all three claims require plaintiff to prove some type of deception or falsity on the part of defendant. (See Delaware Deceptive Trade Practices Act, 6 Del.C. § 2531, et. seq.; Lanham Act U.S.C. § 1125(a); and Common Law Unfair Competition, Rest., Torts, §§ 711-743). These are specific allegations of fraud. Ventana has not shown that these claims have any alternative negligence theory that could be covered under the insurance policy. Thus, the Magistrate Judge recommends the 2002 false material exclusion would apply and relieve St. Paul of any potential duty to defend.

R & R, pp. 33-34. The Court agrees with the magistrate judge that, while there were specific allegations of fraud (*see*, DSOF, Declaration Ex. 2, DAC, ¶¶ 80, 86, 90 ("Ventana's September 24, 2002 news release and web site posting was knowingly and willfully false and/or misleading.")), there were no alternative allegations that could be covered under the insurance policy. The Court finds the 2002 false material exclusion applies and relieves St. Paul of any potential duty to defend.

XII. *Issues of First Impression*

Ventana asserts that the magistrate judge failed to consider that this case raises a number of issues of first impression under Arizona law. Ventana asserts that:

These issues include: (1) the "personal injury" offense of "[m]aking known . . . material that disparages . . . others" implicated potential coverage; (2) whether two variant St. Paul intellectual property exclusions barred a defense for otherwise covered claims of implicit disparagement based upon Ventana's statements that necessarily challenged Digene's claims of patent-based exclusivity in marketing its HPV 35 probe; or (3) that such claims, although stated in the alternative to include merely misleading statements, barred even a defense because such statements were necessarily made with "knowledge of falsity."

Ventana's Objection, p. 4, n. 14.

St. Paul asserts, however, that "[t]his court is being called upon to resolve the same type of issue that scores, if not hundreds, of other courts have been called upon to answer under Arizona law. The court is presented with the issue of whether an insurer had a duty to defend. Arizona law is settled on the rules that govern whether a duty to defend exists." St. Paul's Response, pp. 14-15. St. Paul asserts that the magistrate judge properly applied the law to this case.

The Court agrees with St. Paul. With the exception of a broader definition of

"launch," the Court agrees with the findings and legal analyses by the magistrate judge. The Court does not find the magistrate judge improperly relied solely on Arizona law.

XIII. *Attorneys' Fees*

Ventana asserts that the magistrate improperly recommended an award of attorneys' fees even though the arguments raised by Ventana were pertinent and raised novel issues. Citing to *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265-66, 99 P.3d 1030, 1035-36 (App. 2004), Ventana argues that the magistrate judge failed to follow Arizona authority that provides that attorneys' fees are rarely awarded in cases of first impression.[12]

St. Paul asserts that, under Arizona law, there are seven factors a court is to consider in determining whether an award of attorneys' fees to a prevailing party in a contract action is appropriate. The Supreme Court of Arizona has stated that there are several factors which are useful in assisting a trial judge in its determination of whether attorneys' fees should be granted under A.R.S. § 12-341.01 (authorizes an award for attorneys' fees in contested contract actions):

1. The merits of the claim or defense presented by the unsuccessful party.

2. The litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result.

3. Assessing fees against the unsuccessful party would cause an extreme hardship.

4. The successful party did not prevail with respect to all of the relief sought.

[*Associated Indemnity Corp. v. Jack C. Warner*, 143 Ariz. 585, 589, 694 P.2d 1199, 1203 (App. 1983)]. In addition to these factors, we would include: the novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction. We also believe that the trial court should consider whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees. *See Wistuber v. Paradise Valley Unified School*, 141 Ariz. 346, 687 P.2d 354 (1984).

*Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

---

[12]Although the Court agrees that whether a case involves issues of first impression is a factor to consider, the Court does not agree that *Orfaly* stands for the proposition that attorneys' fees are rarely awarded in cases of first impression.

St. Paul, asserting that Ventana has violated the spirit of page-limit rules, cited to cases in a misleading manner, made false factual assertions with record cites, misstated the record, ignored settled rules under Arizona law, has sought to confuse matter, argues that Ventana has caused St. Paul to incur significant expense to defend this contract action. St. Paul asserts that the statute was intended to award fees to a prevailing party in exactly this type of case.

The Court disagrees with Ventana's assertion that this case dealt with issues of first impression such that an award of attorneys' fees is not appropriate.[13]  Moreover, the Court considers that, as discussed by this Court and the magistrate judge, Ventana's arguments have little or no merit.  Additionally, this litigation could have been avoided or, at a minimum, the expansive nature of the issues as presented by Ventana could have been avoided; indeed, at times it appears that Ventana deliberately sought to obscure the issues rather than clarify and apply the relevant law to the facts.  The Court also considers that no showing of a hardship to Ventana has been shown. *See* Ventana's Opposition, [Doc. # 42], p. 17; Ventana's Supplemental Memorandum, [Doc. # 62], p. 17.  Further, an award of attorneys' fees in this case would not discourage other parties *with tenable claims* from pursuing those claims.  A consideration of the relevant factors, *Associated Indemnity,* 143 Ariz. at 570, indicates that an award of attorneys' fees is appropriate.[14]

Accordingly, IT IS ORDERED:

1.       The Report and Recommendation [Doc. # 78] is ADOPTED IN PART.

---

[13]The Court notes that the magistrate judge, and this Court, assumed that an implicit disparagement claim is available in the State of Arizona.

[14]The Court notes that the magistrate judge recommended that this Court grant St. Paul's request for attorneys' fees after St. Paul timely complies with L.R.Civ. 54.2.  St. Paul has filed a Motion Regarding Attorney Fees and Costs [Doc. # 79].  Because Ventana may have found it appropriate to wait until this Court issued an order adopting, rejecting, or modifying the Report and Recommendation, the Court finds it appropriate to now schedule a deadline for a response to the motion.

2. Ventana's Motion for Partial Summary Judgment [Doc. # 11] is DENIED.

3. St. Paul's Motion for Summary Judgment [Doc. # 37] is GRANTED.

4. Ventana's Requests for Judicial Notice [Doc. #s 16 and 63] are DENIED.

5. St. Paul's Motion for Discovery under Fed.R.Civ.P. 56(f) [Doc. # 37] is DENIED AS MOOT.

6. Ventana shall file any Response to St. Paul's Motion Regarding Attorney Fees and Costs [Doc. # 79] within 14 days after being served with a copy of this Order. St. Paul shall file any Reply within 7 days after being served with a Response.

7. Ventana's Motions for Leave to File Reply Brief [Doc. #s 82 and 84] are DENIED.

8. This matter is referred to Magistrate Judge Charles R. Pyle for further proceedings (i.e., attorneys' fees) and report and recommendation in accordance with the provisions of 28 U. S. C. § 636(b)(1) and L.R.Civ.P. 72.1 and 72.2.

All future filings in this case shall be designated:

**09-CIV-102 TUC CKJ (CRP)**

DATED this 28th day of April, 2010.

_____
Cindy K. Jorgenson
United States District Judge

- 24 -